PROUDFOOT v STATE FARM MUTUAL INSURANCE COMPANY

Docket No. 232282. Submitted October 2, 2002, at Lansing. Decided January 10, 2003, at 9:10 A.M. Leave to appeal sought.

Evelyn Proudfoot brought an action in the Washtenaw Circuit Court against State Farm Mutual Insurance Company, her no-fault automobile insurer, seeking personal protection insurance benefits for proposed modifications to her home made necessary by the loss of her right leg and her use of a wheelchair following injury in an accident involving an automobile. The plaintiff had paid an architect to provide her with a plan for the home modifications and an estimate of the cost of the modifications. The defendant had refused to reimburse the plaintiff for the architect's fee or to pay any benefits for home modifications. Consequently, no modifications were made. A jury returned a verdict and award for the plaintiff with respect to the architect's fee, in the amount paid by the plaintiff, and for the cost of home modifications, in an amount slightly lower than the architect's estimate. The court, Timothy P. Connors, J., entered judgment on the jury verdict and awarded the plaintiff attorney fees and costs and no-fault penalty interest on the award for the architect's fee and the future home modifications. The court further assessed judgment interest on the architect's fee, the no-fault interest on the architect's fee, the future home modifications, the no-fault attorney fees and costs, and the no-fault interest on the home modifications. The defendant appealed.

The Court of Appeals held:

1. The trial court appropriately ordered the defendant to pay the award for the home modifications to the trial court for distribution to the plaintiff as expenses for home modifications are incurred. To deny monetary relief here might provide incentive for protracted litigation given the defendant's refusal to provide the plaintiff any home modifications since her initial request.

2. The trial court did not err in awarding plaintiff attorney fees under MCL 500.3148(1). Subsection 3148(1) provides that the attorney fees of a claimant in an action for personal or property protection benefits that are overdue shall be a charge against the insurer in addition to the benefits recovered if the court finds that the insurer unreasonably refused to pay the claim or unreasonably

delayed in making proper payment. An insurer is responsible under the no-fault act for all personal protection insurance benefits arising out of allowable expenses. MCL 500.3107(1)(a). Allowable expenses consist of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation. MCL 500.3107(1)(a). Because the architect's plans and estimate sought to implement home modifications that were deemed by a jury to be reasonably necessary for the plaintiff's care, the architectural services were an allowable expense chargeable to the defendant. The trial court did not err in determining that personal protection insurance benefits for the architectural services were overdue and that the defendant is liable for the plaintiff's attorney fees on the basis of the overdue benefits for the architectural services. The trial court also did not err in determining that the defendant unreasonably refused or delayed paying personal protection insurance benefits for home modifications that the jury deemed reasonably necessary and that the defendant is liable for the plaintiff's attorney fees for its refusal or delay.

3. The trial court properly determined that the plaintiff should be awarded no-fault interest on the home modifications. No-fault interest is intended to penalize an insurer that is dilatory in paying a claim. The plaintiff did not have to incur expenses for home modifications in order for benefits for home modifications to become overdue.

4. The trial court properly awarded judgment interest on the architect's fee, on the no-fault interest awarded to the plaintiff for the architectural services, and on the attorney fee award. However, because MCL 600.6013(1) does not allow judgment interest on future damages, the trial court erred in awarding judgment interest on the award for home modifications.

Affirmed in part, reversed in part, and remanded for further proceedings.

R. J. DANHOF, J., dissenting, stated that expenses are not overdue until an insurer receives reasonable proof of the amount of loss sustained. Although the plaintiff need not first pay the expenses out of pocket, or have been billed for the expenses, she must become liable for them; the defendant is not obligated to pay for modifications the plaintiff may never make. The expenses for home modifications were not overdue and the defendant should not be required to pay attorney fees or no-fault interest associated with those expenses. Judge DANHOF would reverse and remand for the parties to litigate what constitutes reasonable attorney fees for the architect's bill.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — HOME MODIFI-
    CATIONS — ATTORNEY FEES — NO-FAULT INTEREST.

   A no-fault insurer that has sustained a court judgment against it in an
    action by an insured for personal protection insurance benefits for
    home modifications upon a finding that the modifications were
    made reasonably necessary for the insured's care, recovery, or
    rehabilitation following an injury in an automobile accident may be
    held liable for the insured's attorney fees and for no-fault interest if
    the court finds that the insurer unreasonably refused or delayed
    making payment, even where the insured has not yet incurred
    expenses for such modifications (MCL 500.3107[1][a], 500.3142,
    500.3148).

*Logeman, Iafrate, Januszewski & Pollard, P.C.* (by
*Robert E. Logeman*), for the plaintiff.

*Garan Lucow Miller, P.C.* (by *Daniel S. Saylor* and
*Judith A. Moskus*), for the defendant.

Before: COOPER, P.J., and JANSEN and R. J. DANHOF*,
JJ.

COOPER, P.J. Defendant appeals as of right from the
trial court's imposition of prejudgment interest, MCL
600.6013; no-fault penalty interest, MCL 500.3142; and
attorney fees, MCL 500.3148. We affirm in part,
reverse in part, and remand.

### I. FACTUAL BACKGROUND

In November 1995, plaintiff, a resident of England,
was involved in an accident during a visit to Michi-
gan. Plaintiff sustained serious injuries when she was
struck by an automobile while crossing a street. As a
result of these injuries, plaintiff was subsequently
required to undergo the amputation of her right leg

---

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

above the knee. Plaintiff was fitted for a prosthetic leg but encountered complications, mandating the use of a wheelchair. Defendant, plaintiff's insurer, compensated her for the majority of expenses arising out of the accident. However, a dispute arose over her request for home modifications.

On December 2, 1997, plaintiff's husband submitted a letter to defendant, with an occupational therapist's report, detailing the need for modifications to plaintiff's home. In the letter, he noted that he had contacted a local architect to prepare a proposal and an estimate for the necessary modifications. Plaintiff paid the architect $815[1] for the proposal. The architect's proposal, bill, and estimate were forwarded to defendant in March 1999. According to plaintiff's architect, it would cost approximately $250,000, including the value added tax of 17.5 percent, to make the necessary modifications.

A few months after receiving plaintiff's proposal, defendant sent its own occupational therapist to assess plaintiff's situation. On the basis of its therapist's findings, defendant claimed that the necessary modifications could be accomplished for substantially less money. Defendant denied plaintiff's reimbursement request for the architect's bill and failed to provide *any* money toward the home modifications she requested. Defendant conceded the necessity of home modifications but maintained that plaintiff's requests were unreasonable. At the time of trial, plaintiff's home remained unmodified.

---

[1] The figures used in this opinion have been converted from English pound sterling to American dollars, using the conversion rate stipulated by the parties at trial.

The jury determined that plaintiff incurred allowable expenses as a result of the accident in the amount of $815 for the architect's bill. According to the jury, defendant received reasonable proof of this expense on March 2, 1999. The jury further found that modifications to plaintiff's home were reasonably necessary and that the amount of the allowable expense was $220,500, plus the value added tax. The jury stated that reasonable proof was supplied to defendant for the home modifications on December 2, 1997. On January 5, 2001, the trial court entered a judgment against defendant pursuant to the jury's verdict. The trial court awarded plaintiff $815 for the architect's bill and $259,087.50 for the home modifications.[2] In addition, the trial court awarded plaintiff attorney fees and costs and assessed no-fault penalty interest from April 1, 1999, for the architectural services and the future home modifications. The trial court further assessed judgment interest against defendant on the architect's bill, the no-fault interest on the architect's bill, the future home modifications, the no-fault attorney fees and costs, and the no-fault interest on the home modifications. The judgment interest began to accrue November 27, 1997.

II. A HISTORICAL EXAMINATION OF MICHIGAN'S NO-FAULT ACT

To resolve the issues presented in this case, we must first discuss the history and purpose of the no-fault act. It has been held that "[t]he overall goal of the no-fault insurance system is to provide accident victims with assured, adequate, and prompt repara-

---

[2] The amount for the home modifications includes the 17.5 percent value added tax.

tions at the lowest cost to both the individuals and the no-fault system." *Williams v AAA Michigan*, 250 Mich App 249, 257; 646 NW2d 476 (2002).

Our Supreme Court upheld the constitutionality of the no-fault act in *Shavers v Attorney Gen*, 402 Mich 554, 621-622; 267 NW2d 72 (1978), noting the Legislature's rationale for abolishing tort remedies for personal injuries arising out of motor vehicle accidents. Specifically, the Supreme Court cited the Legislature's view that a change was necessary in part to reduce the heavy burden placed on the court system. The Supreme Court further noted that one of the operational deficiencies that the Legislature endeavored to change with the no-fault act was the fact that the former tort system "discriminated, in terms of recovery, against the uneducated and those persons on a low income scale." *Id.* at 622. The Supreme Court determined that the no-fault act's requirement of prompt payment would ease delays in the court system by decreasing the number of motor vehicle personal injury tort suits. *Id.* at 622-623. Additionally, the Supreme Court suggested that timely payments under the no-fault act would help to protect the disadvantaged or lower income individuals by relieving some of the pressures on them "to settle serious claims prematurely and for less than an equitable amount." *Id.* at 623.

The avowed overall goals and purpose of the no-fault act are defeated if no-fault insurers are allowed to unreasonably deny benefits, thereby requiring their insureds to seek recourse in the legal system. See *Lakeland Neurocare Ctrs v State Farm Mut Automobile Ins Co*, 250 Mich App 35, 42-43; 645 NW2d 59 (2002). To encourage no-fault insurers to promptly

pay an injured party, the Legislature enacted penalty provisions allowing for the payment of attorney fees on unreasonably denied claims and interest on overdue payments. *Univ of Mich Regents v State Farm Mut Ins Co*, 250 Mich App 719, 739; 650 NW2d 129 (2002).

### III. STANDARD OF REVIEW

The interpretation and application of statutes are questions of law that are reviewed de novo on appeal. *Lincoln v Gen Motors Corp*, 461 Mich 483, 489-490; 607 NW2d 73 (2000). The primary goal when construing a statute is to ascertain and give effect to the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). When determining the Legislature's intent, this Court must first look to the statute's specific language. *Gauntlett v Auto-Owners Ins Co*, 242 Mich App 172, 177; 617 NW2d 735 (2000). Judicial construction is unnecessary if the meaning of the language is clear. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). However, judicial construction is appropriate when reasonable minds can differ regarding the statute's meaning. *Gauntlett, supra* at 177. Terms contained in the no-fault act are read " 'in the light of its legislative history and in the context of the no-fault act as a whole.' " *Id.* at 179, quoting *Gobler v Auto-Owners Ins Co*, 428 Mich 51, 61; 404 NW2d 199 (1987). Further, courts should not abandon common sense when construing a statute. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994). Given the remedial nature of the no-fault act, courts must liberally construe its provisions in favor of the persons who

are its intended beneficiaries. *Spencer v Citizens Ins Co*, 239 Mich App 291, 300-301; 608 NW2d 113 (2000).

### IV. DECLARATORY JUDGMENT VERSUS MONEY JUDGMENT

Defendant initially characterizes the judgment entered by the trial court as a money judgment, rather than a declaratory judgment for plaintiff's future home modifications, and by implication indicates that a trial court may not establish an escrow account to enforce its judgment. However, defendant fails to explain or offer any authority for its position that a trial court is without the authority to establish such an account. See *Chapdelaine v Sochocki*, 247 Mich App 167, 174; 635 NW2d 339 (2001). A declaratory judgment is unique in that it is neither completely legal nor equitable in nature. See *Coffee-Rich, Inc v Dep't of Agriculture*, 1 Mich App 225; 135 NW2d 594 (1965); see also 9 Michigan Pleading & Practice, Declaratory Judgments, § 69.03, p 797.

In Michigan, courts of record have the authority to declare the rights of an interested party seeking a declaratory judgment. MCR 2.605(A)(1). "Declaratory judgments have the force and effect of, and are reviewable as, final judgments." MCR 2.605(E). Damages may also be granted after the entry of a declaratory judgment. *Durant v Michigan*, 456 Mich 175, 208-209; 566 NW2d 272 (1997); see, generally, 20 Michigan Law & Practice (2d ed), Judgment, § 86, p 93. However, such supplemental relief requires reasonable notice and a hearing. MCR 2.605(F). Conversely, a money judgment simply requires the immediate payment of a sum of money as opposed to directing an act to be completed. *In re Forfeiture of $176,598*, 465 Mich 382, 386; 633 NW2d 367 (2001).

In this case, the trial court entered the following judgment with regard to plaintiff's future home modifications:

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff recover future home modifications as awarded by the jury in the amount of $220,500.00 plus value added tax of 17.5% for a total future home modification award in the amount of $259,087.50 is awarded, [sic] such amount to be overseen by the Court as the expenses are incurred under the no-fault law.

In *Manley v DAIIE*, 425 Mich 140; 388 NW2d 216 (1986), the Supreme Court ruled that a trial court may enter a declaratory judgment for a specific amount of money when future damages are involved. However, it is important to note that the future damages awarded in *Manley*, involved reimbursement for future nursing care. Such an award was truly a declaration of future rights because the hourly rate for nurses aides and the amount of nursing care necessary fluctuates and is an ongoing expense.

In the instant case, the term "declaratory," as used on the verdict form, is really a misnomer. Unlike *Manley*, this case involves a sufficiently definitive one-time expense that a jury deemed reasonable and necessary. Furthermore, it is important to note that declaratory relief is not considered exclusive and that additional monetary relief may be appropriate where the parties had notice and a hearing. See *Durant*, *supra* at 208-209. A jury trial was held in this case to determine what constituted a reasonable amount for home modifications. Both defendant and plaintiff had an opportunity to argue the viability of plaintiff's plan during the trial and defendant has not contested the jury's verdict. See *id.* at 209-210. As pointed out in

*Durant, supra* at 211, "[t]o deny monetary relief here might provide incentive for protracted litigation in the future" given defendant's refusal to provide plaintiff any home modifications since her initial request in 1997. Thus, we find that the trial court appropriately ordered defendant to pay the total amount of home modification benefits to the trial court for distribution.

### V. NO-FAULT ATTORNEY FEES

Defendant next argues that the trial court clearly erred in awarding plaintiff attorney fees under MCL 500.3148(1). Specifically, defendant claims that there was a bona fide factual dispute regarding the architectural plans and that the personal protection insurance benefits for the home modifications were not overdue under the no-fault act. We disagree.

An insurer is responsible under Michigan's no-fault act for all personal protection insurance benefits arising out of "allowable expenses." MCL 500.3107(1)(a). Allowable expenses consist of "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). In *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 50; 457 NW2d 637 (1990), our Supreme Court instructed that an item is an "allowable expense" under the no-fault act if: (1) the charge is reasonable; (2) the expense is reasonably necessary; and (3) the expense is incurred.

If litigation results from an insurer's unreasonable refusal to pay benefits for an allowable expense,

attorney fees are awardable. Specifically, MCL 500.3148(1) provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer *unreasonably refused* to pay the claim or unreasonably delayed in making proper payment.

Personal protection insurance benefits are considered overdue if "not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2); see also *Beach v State Farm Mut Automobile Ins Co*, 216 Mich App 612, 629; 550 NW2d 580 (1996) (holding that the term "overdue" must be similarly construed for purposes of determining the applicability of no-fault attorney fees and no-fault interest).

Absent clear error, this Court will not reverse a trial court's finding regarding an unreasonable refusal or delay in paying benefits. *Attard v Citizens Ins Co of America*, 237 Mich App 311, 316-317; 602 NW2d 633 (1999). Clear error exists when a reviewing court is left with the definite and firm conviction on the entire record that a mistake was made. *Christiansen v Gerrish Twp*, 239 Mich App 380, 387; 608 NW2d 83 (2000). However, "[i]f the insurer's refusal or delay in payment is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty, the refusal or delay will not be found unreasonable under MCL 500.3148(1) . . . ." *Beach, supra* at 629. In such a situation, the insurer must overcome a rebuttable presumption of unrea-

sonableness and justify its delay or refusal of bene-fits. *Id.*

## A. ARCHITECTURAL SERVICES

Defendant questions whether the "proposed archi-tectural drawings" amounted to an allowable expense because they lacked approval and provided no neces-sary service or accommodation to plaintiff.

The record indicates that plaintiff hired an architect to determine the feasibility and cost of the home modifications that were recommended and deemed necessary by her occupational therapist. It is uncon-tested that plaintiff paid the architect for these ser-vices. Because the architect's plans and estimate sought to implement home modifications that were deemed by a jury to be reasonably necessary for plaintiff's care, we find that the architectural services were an allowable expense chargeable to defendant. See MCL 500.3107(1)(a).

To the extent defendant further claims that it legiti-mately refused payment of the architect's bill because of a bone fide factual dispute, we disagree. Plaintiff notified defendant of her need for home modifica-tions in December 1997, and informed defendant that she was obtaining the services of an architect for that purpose. Defendant received the architect's proposal and bill in March 1999, and it was not until several months later that defendant attempted to verify or assess plaintiff's needs. Defendant never questioned plaintiff's intention to hire an architect. Indeed, defen-dant notes in its appellate brief that the plans created by plaintiff's architect could be utilized in forming a compromise plan. It is apparent that defendant's dis-

pute lies with the extent of the modifications recommended and not with plaintiff's consultation with an architect. Thus, we find no clear error in the trial court's award of attorney fees.[3]

### B. HOME MODIFICATIONS

In addition, we find that plaintiff is also entitled to attorney fees as a result of defendant's failure, despite reasonable proof of need, to make necessary modifications to plaintiff's home. Defendant does not contest the reasonableness of its refusal to modify plaintiff's home. Rather, defendant argues that personal protection insurance benefits were not due in this case until plaintiff became liable for the home modifications. In fact, defendant agreed that some home modifications were necessary and the record shows that plaintiff was without full access to her home. In spite of this, defendant never presented a plan definitively expressing the modifications it would approve or proffered any money for home modifications to plaintiff during the three years before trial. The jury found that reasonable proof of the need for these modifications was supplied to defendant on December 2, 1997, with a viable proposal and cost estimate on March 2, 1999. Consequently, there is proof to support the trial court's determination that defendant's delay was unreasonable and that the home modifications were overdue.

---

[3] We note that the parties stipulated at trial that $69,300 is a reasonable amount for attorney fees in this case. While defendant claims that the full amount of attorney fees cannot be assessed on its failure to timely reimburse plaintiff solely for the architect's bill of $815, it fails to cite any authority to support this position. See *Davenport v Grosse Pointe Farms Bd of Zoning Appeals*, 210 Mich App 400, 405; 534 NW2d 143 (1995).

### 1. *MANLEY* AND FUTURE EXPENSES

Our Supreme Court has found that attorney fees are permissible in no-fault cases involving declaratory judgments for future expenses. *Manley, supra* at 160. The trial court in that case entered a declaratory judgment for future nursing services and awarded the plaintiff attorney fees under the no-fault act. *Id.* at 147. The Supreme Court in *Manley* upheld the award of attorney fees because the insurer unreasonably refused to pay for nursing services and the insured's attorney was forced to litigate the claim to establish the insurer's *obligation* to pay. *Id.* at 160. In holding that declaratory judgments providing for necessary and allowable future expenses were permissible, the Supreme Court stated that it would be "neither a workable nor a sound rule of law" to permit an insurer to relitigate previously decided issues when an insured seeks payment for expenses incurred after the date of trial. *Id.* at 157.

Similarly, in the case at bar, plaintiff was forced to seek legal action to establish defendant's *obligation* to pay for necessary home modifications. Defendant failed to provide *any* assistance to plaintiff. Absent independent financial means, plaintiff was unable to commence or obligate herself for these modifications. The record reveals a lack of any realistic finalized plan that defendant was prepared to implement at the time of trial. Consequently, the trial court properly decided that plaintiff was also entitled to attorney fees because defendant's delay in proffering a finalized alternative plan or payment was unreasonable.

2. THE PURPOSE OF MICHIGAN'S NO-FAULT ACT

It is important to remember that the no-fault act was created in part to ease the burden on the court system and provide a manner in which all parties would have a fair opportunity to litigate legitimate no-fault claims. See *Shavers, supra* at 622-623; *Williams, supra* at 257. Defendant essentially asks this Court to accept the premise that an insured must be able to pay for or have the economic ability to obligate one-self for all benefits before they become due. However, this argument would result in economic dispar-ity wherein only the wealthy or those with a healthy credit line would be able to pursue a dispute with their insurance company over benefits. Such a con-struction would condone the very injustices that the Legislature enacted the no-fault act to prevent.

In terms of home modifications, defendant's posi-tion would preempt insureds from receiving poten-tially costly accommodations unless they could afford the modifications themselves or find someone willing to complete the job without any assurance of pay-ment. Indeed, in the instant case the home modifica-tions that the jury found to be reasonably necessary totaled nearly a quarter million dollars. To require plaintiff to pay for these modifications before defen-dant could become liable would be inequitable given the remedial nature of the no-fault act. See *Spencer, supra* at 300-301. For example, *Williams, supra,* involved extensive home modifications that ultimately led to the no-fault insurer's decision to provide its insured with a new home to accommodate his needs. There was no indication in *Williams* that the insurer would require its insured to purchase the home

before it would provide benefits. *Id.* It would be illogical to deny plaintiff's request for attorney fees when defendant's refusal to pay for reasonable modifications served to prevent plaintiff from receiving the reasonable and necessary accommodations for her disability.

The jury determined that defendant received reasonable proof of the need for modifications. At the time of trial, defendant had not paid for any of plaintiff's home modifications despite its acknowledgement that some modifications were in fact necessary. Even if defendant disagreed with respect to the extent of the modifications, it had a duty to pay for those costs it did not dispute. See *Butt v DAIIE*, 129 Mich App 211, 220-221; 341 NW2d 474 (1983). Thus, defendant's complete refusal to pay for any modifications since December 1997 was unreasonable and ultimately forced plaintiff into litigation.

To find that defendant was not liable for attorney fees, when it was necessary for plaintiff to litigate in order to obtain the necessary home modification benefits, would defeat the purpose of the no-fault act. Access to the court system would be limited to those who had the financial wherewithal to prepay or obligate themselves for modifications or those who could afford to retain the services of an attorney. We award attorney fees in no-fault cases so that insurers promptly pay injured parties for reasonable claims. *Univ of Mich Regents, supra* at 739. On the basis of the record presented, we find no clear error in the trial court's determination that the home modifications were overdue and that attorney fees were awardable for defendant's inaction.

## VI. NO-FAULT INTEREST

Defendant contends that it was similarly exempt from paying no-fault interest on the home modifications. Essentially, defendant argues that any benefits it owes plaintiff for home modifications are not "overdue" under the no-fault act because they have yet to be incurred.

Again, we disagree with defendant's contention that an insured has to become personally indebted in order to receive benefits under the no-fault system. The same principles that we discussed in determining defendant's liability for attorney fees based on the home modification award applies to no-fault interest. "Unlike prejudgment interest, which is intended to compensate a party for the delay in receiving its damages, no-fault interest is intended to penalize an insurer that is dilatory in paying a claim." *Attard, supra* at 319. Thus, for the same reasons discussed in awarding plaintiff attorney fees for defendant's failure to timely provide reasonable home modifications, we determine that the trial court's decision to award plaintiff no-fault interest on this ground was also proper.

## VII. JUDGMENT INTEREST

We agree, however, with defendant that plaintiff is not entitled to judgment interest on the future home modifications. Under MCL 600.6013(1):

Interest is allowed on a money judgment recovered in a civil action, as provided in this section. However, for complaints filed on or after October 1, 1986, interest is not allowed on *future damages* from the date of filing the complaint to the date of entry of the judgment. As used in this

subsection, "future damages" means that term as defined in
section 6301. [Emphasis added.]

According to MCL 600.6301, future damages are those
damages that arise from a personal injury that the
jury determines will accrue after the damage findings
are made.

We note that defendant does not contest the trial
court's award of judgment interest on the architect's
fee and we find that this award was proper. We fur-
ther find that the trial court properly granted judg-
ment interest on the no-fault interest awarded to
plaintiff for the architectural services. Moreover, the
trial court's award of judgment interest on the attor-
ney fees was also appropriate.

In summary, we find the trial court's award to be
equitable and consistent with the no-fault act's goal of
promoting judicial economy and equal access to the
courts. To deny plaintiff the relief granted in this
opinion would merely reward defendant for its failure
to timely provide plaintiff her rightful benefits for sev-
eral years.

We affirm in part, reverse in part, and remand to
the trial court for further proceedings consistent with
this opinion. We do not retain jurisdiction.

JANSEN, J., concurred.

R. J. DANHOF, J. *(dissenting)*. I respectfully dissent.
Expenses for home modification were not overdue
because plaintiff has not incurred those expenses and
there was a bona fide factual dispute over the neces-
sity of the modifications. I would reverse and remand
in part.

The goal of the no-fault act is "to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain *economic losses.*" *Shavers v Attorney Gen*, 402 Mich 554, 579; 267 NW2d 72 (1978) (emphasis added). Both statutory interest and attorney fees may be awarded only on expenses that are overdue. MCL 500.3142 (interest); MCL 500.3148(1) (fees). Expenses are not overdue until an insurer receives reasonable proof "of *the amount of loss sustained.*" MCL 500.3142(2) (emphasis added). Although plaintiff need not first pay the expenses out of pocket, or have been billed for the expenses, she must become liable for them; defendant is not obligated to pay for modifications plaintiff may never make. See *Shanafelt v Allstate Ins Co*, 217 Mich App 625, 636-638; 552 NW2d 671 (1996); *Moghis v Citizens Ins Co of America*, 187 Mich App 245, 247; 466 NW2d 290 (1991) ("Defendant is not obligated to pay any amount except upon submission of evidence that services were actually rendered and of the actual cost expended."). This is how an expense is incurred: plaintiff must have a *loss* before defendant is required to pay it. *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 50; 457 NW2d 637 (1990); MCL 500.3110(4).

In this case, even the trial court recognized that plaintiff never became liable for her house modification expenses; it acknowledged that defendant would be responsible for the modification costs only "as the expenses are incurred under the no-fault law." Plaintiff discusses at length the reasonableness of the modifications and how the jury found they were necessary, but can point to no actual loss, an element required by the statutes. Rather, plaintiff asks this Court to hold that an expense is incurred when defen-

dant is presented with a quoted estimate for potential expenses. This is clearly contrary to the statutory language and would open the door to considerable abuse both in terms of unreasonable estimates and estimates for work that is ultimately never performed.

The trial court found that defendant unreasonably delayed in making payment. However, MCL 500.3148(1) provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

Because the payments were not overdue, the court erred in considering at all whether fees should be awarded. Furthermore, the scope of inquiry under § 3148 is not whether the insurer ultimately is held responsible for a given expense, but whether its initial refusal to pay the expense was unreasonable. *McCarthy v Auto Club Ins Ass'n*, 208 Mich App 97, 103; 527 NW2d 524 (1994). If the insurer's refusal or delay in payment is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty, the refusal or delay will not be found unreasonable under MCL 500.3148(1). *Beach v State Farm Mut Automobile Ins Co*, 216 Mich App 612, 629; 550 NW2d 580 (1996).

In this case, there was both a clear question of factual uncertainty and a clear question of statutory construction. The issue of the reasonableness of plaintiff's proposed modifications was a factual matter resolved by the jury. The question of the meaning of

"incurred" used in the statutes was not resolved until after the jury trial. Plaintiff argues that rescinding the penalties of fees and interest in this case will permit insurers in the future to stall on payments and force plaintiffs to go to trial; however, this would only be the case where there are legitimate reasons for delay, as identified in *Beach. Id.* When an insurance company, presented with reasonable bills, unreasonably refuses or delays payment, then the penalties apply.

Plaintiff also argues that requiring injured persons to become liable for expenses before they can recover from insurance companies discriminates against those who cannot afford to pay out of pocket or go into debt. However, this Court is not to question the wisdom of the Legislature but may only carry out its intent as indicated by the plain language of the statute. *People v Morris*, 450 Mich 316, 326; 537 NW2d 842 (1995). Moreover, plaintiff need not become liable for the entire project before seeking payment; she can submit claims to defendant *as they are incurred.*

The majority notes that the parties stipulated $69,300 as a reasonable amount for attorney fees, and defendant does not dispute that the expense for the architect's bill was actually incurred. However, this does not mean that defendant should be penalized for the entire sum on the basis of the one, de minimis expense. MCL 500.3148(1) only entitles plaintiff to attorney fees incurred in conjunction with representation concerning benefits that are overdue. *McKelvie v Auto Club Ins Ass'n*, 459 Mich 42, 48; 586 NW2d 395 (1998). Plaintiff is not entitled to expenses for counsel when those expenses were not incurred for the purpose of obtaining overdue benefits.

I would find the expenses for modification were not overdue, and defendant should not be required to pay attorney fees or interest associated with that part of the litigation. I would remand the case for the parties to litigate what constitutes reasonable attorney fees for the $815.10 architect's bill.